## LEWIS v. TOBIAS *et als.*

The question of ordering papers to be delivered up and canceled by a Court of Chancery, is not so much a question of jurisdiction as of the propriety of its exercise in the given instance; for the power of equity, in such cases, has been long exercised, and is general in its character. But it is a power to be carefully used, as capable of great abuse.

A Court of Equity will not exercise jurisdiction to compel the surrender and cancellation of a promissory note, where the party has a clear remedy at law.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

This was a bill in equity, filed to cancel a promissory note of $2000, which note the complainant alleges he had paid, or discharged by another note of $1200, given and received as a satisfaction of the first. The first note was past due at the time of instituting this suit. No peculiar circumstances are shown in the bill which call upon a Court of Equity to act upon this subject; but the case, as presented, is the ordinary case of a party paying his note, or discharging his liability on it, by " accord and satisfaction," and the holder refusing to admit the validity of the defence, and to surrender to the payor the note. The question is made by the appellant, whether a Court of Equity will exercise jurisdiction in this case.

The Court below decreed that defendants deliver up the note, and that the same be canceled, from which decree, the defendants appealed to this Court.

*Janes, Lake, and Boyd,* for Appellants.

The case, as made by the complaint and the proof, is not one calling for the interposition of a Court of Equity. Hamilton *v.* Cummings, 1 Johnson's Ch. R., 517; Butler *v.* Durham, 2 Kelly, (Ga.,) 413. Equity exercises jurisdiction to direct the cancellation of written instruments only in its sound discretion, in cases where the remedy at law is not adequate, by reason of loss of testimony, lapse of time, or something peculiar to the case. Story Equity Juris., § 705.

*James A. McDougall* for Respondent.

As to the position of appellant, we answer by saying that there is no case on record where chancery, having possessed jurisdiction over the subject-matter, and having first taken jurisdiction of the cause, was held to have committed error in not abandoning the jurisdiction thus first assumed. No instance can be produced where it has been ever contended that chancery, in such a case, was bound to abandon its jurisdiction. I insist, and it can not require authority to establish the position, that chancery has not the right to abandon the jurisdiction. That plaintiff, having properly sought his remedy in a competent Court, and there being, at the time, no conflict, by reason of the same subject being before a different Court, the plaintiff has a legal and unquestionable right to a hearing and judgment, or decree, by the Court thus first appealed to. It will be perceived, from the authorities cited on the part of appellants, that this position is not questioned by them, while it will further appear that chancery, in its discretion, in certain cases, may exercise jurisdiction, even where the subject-matter is in litigation at law. See the case of Hamilton *v.* Cummings, 1 John. Ch., 517, cited by appellants, as, also, the case in 2 Kelly, 413; also, Story Eq. Juris., § 705—all of which authorities cited sustain the position of respondent.

BALDWIN, J., after stating the facts, delivered the opinion of the Court—FIELD, J., concurring.

The question of ordering papers to be delivered up and canceled, is not so much a question of jurisdiction as of the propriety of its exercise in the given instance; for the power of equity, in such cases, has been long exercised, and is general in its character. But it is a power to be carefully used, as capable of great abuse. The cognizance of such cases, where no equitable circumstances appear, draws to the Court of Chancery the trial of the law and the facts; and unless some limit were put upon the exercise of this power, it is obvious that, in every case of a mere legal defence to a money security, the holder might be forced to try his case in a Court of Equity, without the benefit of a trial by jury.

Chancellor Kent, in Hamilton v. Cummings, (1 Johns. Ch., 517,) after an elaborate review of the English cases, held that the power of a Court of Equity to order a written instrument to be delivered up and canceled, is discretionary in its nature, and depends for its exercise upon the special circumstances in each case, showing that a resort to the Court is necessary, or eminently proper.

Mr. Justice Duer, in Field v. Holbrook et al., (14 How. Pr. R., 108,) cites this doctrine, and says : " We believe this a just view of the law, as it still exists ; and it necessarily follows that, when appeal is made to this discretionary power of the Court, the special circumstances that can alone justify its exercise must be set forth in the complaint, since these are emphatically the facts that constitute the cause of action."

The opinion from which this citation is made, is a learned and well-considered review of the whole doctrine.    This jurisdiction is placed by the venerable Judge upon the only ground, which, it seems to us, will sustain it—that is, the power of a Court of Equity to prevent an injury that would otherwise prove irreparable.    The learned Judge proceeds to classify the cases over which this equitable jurisdiction should be exerted, as follows :

"*First*—When the plaintiff alleges that the instrument, which he prays may be surrendered or canceled, is void, upon grounds of which a Court of Equity alone can take cognizance; in fewer words, when he sets up a purely equitable defence.

" *Second*—When the instrument is a deed or other document concerning real estate, which, although inoperative if suffered to remain uncanceled, would throw a cloud upon the plaintiff's title to the lands which it embraces, or to which it refers. (Pierce v. Webb, 3 Barb. Ch. R., 16; Jackman v. Mitchell, 13 Vesey Rep., 581; Hayward v. Dunsdale, 17 Ib., 111; Attorney-General v. Morgan, 2 Russell's Rep., 306; Petit v. Shephard, 5 Paige Rep., 498; Van Doren v. Mayor of New York, 9 Ib., 388; 2 Story's Eq. Jur., 6th ed., § 700, note 2, and other cases there cited.)

" *Third*—When the instrument is negotiable in its character as a bill of exchange, and by the putting it into circulation by the holder, would be a fraudulent act. (2 Story's Eq. Jur., ut sup., § 700, note 1, and cases there cited.)

" *Fourth*—Where the plaintiff claims to have a defence valid in law, but which rests upon evidence which he is in danger of losing, if the adverse party is suffered to delay the prosecution of his claims. (Hamilton v. Cummings, 1 John. Ch. R., 529, et seq.; 2 Story's Eq. Jur., ut sup., note 5, and cases there cited."

Mr. Justice Story, also, (in vol. 2 of Eq. Jur., § 700,) states that the whole doctrine is based upon the principle of *quia timet.*    In Threlfall v. Lunt, (7 Sim. R., 627,) the Court refused to interfere where a note had gone into judgment, on the ground that the

defence was complete at law, and there was scarcely a pretence of danger from future litigation. The same author, (§ 702,) says that the old course was to direct an issue when the facts were contested, but that the modern course is for the Court to pass upon the facts, unless, from the contradictory character of the proofs, it is thought advisable to submit them to a jury. In section seven hundred and five, the author treats of cases of instruments not originally void, but which, by satisfaction or payment, have become *functi officio*. The jurisdiction is placed upon the same general principle, and relief is given to prevent "the danger of future litigation when the facts are no longer capable of complete proof, or have become involved in the obscurities of time." Chancellor Kent, in his opinion (in 1 John. Ch.,) before noticed, qualifies the doctrine he maintained in that case as follows: "But while I assert the authority of the Court to sustain such bills, I am not to be understood as encouraging applications where the fitness of the exercise of the power of the Court is not pretty strongly displayed. Perhaps the cases may be well reconciled on the general principle that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual cases may dictate; and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defence not arising on its face may be difficult or uncertain at law, or upon other special circumstances peculiar to the case, and rendering a resort here highly proper, and clear of any design to promote expense and litigation."

In Baker v. Durham, (2 Kelly Georgia R., 422,) the subject is thoroughly reviewed. That was a much stronger case than this for the interposition of the Court. It was a suit brought by several sureties for the surrender and cancellation of fifteen notes, alleged to have been paid by the principal debtor; the bill also alleging that several suits had been brought on them, nonsuits taken, and still threatened to be prosecuted. The Court held that, as the notes were not negotiable within the law merchant, it would not interpose, for the specific reason that the defendant might set up his defence in the suits at law at the instance of the holder of the notes.

The Court comment upon the want of an averment in the bill that the fact of payment was no longer capable of proof, or, that from lapse of time, it was involved in obscurity, and held that these averments not being made, it was plainly a pure case of legal defence, which might be made without the aid of equity. In this connection, it is said that "whilst equity abhors a multiplicity of suits, and will restrain vexatious and costly litigation, yet she is careful not to permit a party who may be fully redressed or protected at law to drag his antagonist into her halls,

37

there to burden him with the costs of her cumbersome and tedious procedure." The relief in that case was denied.

If the doctrine contended for by the respondent be at all debatable elsewhere, it is more clear here, for we have a statute whereby a party may force his adversary to wage his claims, or else forever abandon them. By section five hundred and twenty-seven of the Practice Act, it is provided that "an action may be brought by one person against another for the purpose of determining an adverse claim which the latter makes against the former, for money or property, upon an alleged obligation."

This is not a proceeding for that purpose, but the evident effect of it is to transfer to a Court of Chancery the trial of an issue legal in its character, whereby the defendant becomes the plaintiff, the Judge, the jury; and the payor—appropriately the defendant—selects the forum, mode of trial, and the time of it. The defence was cognizable at law, for if the complainant paid the debt or satisfied it by "accord and satisfaction," he might set up this defence as well, at least, in a Court of Law as of Equity. The costs of litigation are, at least, as great in one case as the other. The note, being past due, would come into the hands of any assignee charged with the same defences and equities as attached to it in the hands of the payee.

If we take the principle on which Courts of Equity have acted, we can not see that the payor is subjected to any hazards, or risks, or difficulties, in maintaining his defence, which he must not necessarily encounter in a Court of Equity; while, if we recognize the principle invoked by the respondent, we must necessarily admit, that, in every case in which a payor of a note, or bond, or other money security, has a defence to it, though purely legal, we must admit him, at his pleasure, into a Court of Equity, deny the holder a trial by jury, and permit the payor to take the place of an actor in a proceeding to test his liability. We see no necessity for such a principle, and we think it would produce only confusion; and that it starts with a denial of a positive right of the holder.

If the holder unreasonably delays to sue, the payor may force him to do so under the statute; and, if there are equitable circumstances of defence, these may entitle the payor to the interposition of chancery; but, on the facts of this record, we think, on principle, and from reasons of policy, this proceeding is unauthorized.

Judgment reversed, and bill dismissed, without prejudice to the plaintiff below to set up the matters therein alleged, in defence of an action at law.