Quebec Bank of Toronto *v.* Weyand & Jung et al.

---

[*General Term, April,* 1873.]

THE QUEBEC BANK OF TORONTO *v.* WEYAND & JUNG ET AL.

The plaintiff brought its action in the Superior Court of Cincinnati, upon the promissory note of the defendants. The defendants filed an answer and counter-claim, in which they denied any indebtedness, and set up that the note was a mere accommodation note, and had been received by the plaintiff without any consideration, and was now held by it in fraud of their rights, and asked that the plaintiff be required to deliver up the note to them to be canceled. The plaintiff then dismissed its action in the Superior Court, and commenced proceedings on the note in the Circuit Court of the United States, and afterward filed a reply to the answer and counter-claim, in which it asks judgment on the note "as in the petition."

*Held,* that the Superior Court had jurisdiction to try the issue made by the counter-claim and reply, and to decree the cancellation of the note.

The Merchants' National Bank of Cincinnati, as the agent of the Quebec Bank of Toronto, held for collection a gold draft, of which Geo. M. Bacon & Co., of Cincinnati, were the acceptors. This draft not being paid at maturity, Bacon & Co. gave their promissory note to the national bank as security for its payment. This note being about to fall due,

Bacon & Co. obtained from Weyand & Jung their accommodation note for the express purpose of taking up the gold draft. The national bank refused to discount this accommodation note, or to apply it in payment of the draft, or to give further time for payment, but received it as collateral security only for the pre-existing debt. The Quebec Bank of Toronto brought suit against Weyand & Jung on the note at its maturity.

*Held,* that, as the national bank, as the agent of the plaintiff, received the accommodation note without any consideration therefor, and as collateral security only for a pre-existing debt, it was received subject to any defense which Weyand & Jung might have to it against Bacon & Co. ; and as Bacon & Co. gave Weyand & Jung no consideration for it, and as it was not used for the purpose for which it had been given to Bacon & Co., the plaintiff could not maintain its action on it against Weyand & Jung.

*Stallo & Kittredge,* for plaintiff in error.

*Von Seggern & Glidden,* and *J. F. Follett,* for defendants in error.

O'CONNOR, J. This is a petition in error to reverse a judgment rendered at Special Term.

On the 9th November, 1869, Thomas Clarkson & Co. shipped at Toronto, Canada, 15,000 bushels of barley to Cincinnati, consigned to the order of the Quebec Bank of Toronto, to be delivered at Brighton Station, Ohio, and the next day drew on Geo. M. Bacon & Co., at twenty-five days after date, for the sum of $6,502, in gold. This draft was discounted for Clarkson & Co. by the Quebec Bank of Toronto, they delivering to the bank the bill of lading for the barley, and the Quebec Bank sent the draft and the bill of lading to its agent, the Merchants' National Bank, Cincinnati, for collection. Geo. M. Bacon & Co., for whom the barley was intended when paid for, or when the gold draft was secured to be paid, accepted the draft. Afterward, by the mistake of Reynolds, Whiting & Bangs, of Toledo, Ohio, probably induced by the advice of Sanford C. Hughes, of the firm of Geo. M. Bacon & Co., the barley was shipped from Toledo by canal, instead of by railroad, and the result

was that Geo. M. Bacon & Co. obtained the possession of the barley without either paying the gold draft, or securing its payment, and they sold the barley and obtained the proceeds. Afterward, on the 23d December, 1869, after the gold draft was past due and unpaid, Geo. M. Bacon & Co. executed a promissory note for the sum of $6,616, in gold, payable forty-five days after date, to the order of Thos. Clarkson & Co., at the Merchants' National Bank, indorsed by John Hughes, and this note was delivered to the Merchants' National Bank, as the agent of the Quebec Bank, as collateral security for the payment of the gold draft.

When this last note was about falling due, Geo. M. Bacon, of the firm of Geo. M. Bacon & Co., called on Jung, of the firm of Weyand & Jung, the defendants in this case, and representing that he (Bacon) wanted to get the barley, and that he could not get it without payment of the gold draft, and concealing from Jung that he had long since obtained the barley and sold it, requested Jung to give him an accommodation note of the firm of Weyand & Jung, to get discounted, to take up the gold draft. This request Jung complied with, and gave the firm-note of Weyand & Jung, for the sum of $5,000, payable sixty days after date, to the order of Geo. M. Bacon & Co. This note Geo. M. Bacon took to the Merchants' National Bank for the purpose of getting discounted, and applying the proceeds in payment of the gold draft, or of the note given to secure the payment of the gold draft. At this point there is much conflict in the testimony, Bacon claiming that the bank refused to discount the note, and that he took the note away with him from the bank, to make efforts to have it discounted elsewhere, or to procure other indorsers, and that failing to do so, that on a subsequent day, after having a deed of assignment for the benefit of creditors drawn up, but not yet signed, another effort was made to have the note discounted by the Merchants' Bank, which the bank again refused; that then the deed of assignment was executed, and on the

next morning after, it was accepted by the trustees, the bank sent for Bacon & Co.; that both members of the firm went to the bank, and the cashier desiring to see the note they gave it to him, and that he said the bank would retain it, and keep them "all," meaning the gold draft and the note, to secure its payment, and the note for $5,000 now in suit. That to this Bacon & Co. objected unless the gold draft was delivered up, and saying that they had already made an assignment. The Merchants' Bank, on the other hand, claim, that they did take the note in part payment of the gold draft, and that such was the understanding, and that this was done before the assignment for the benefit of creditors.

However this may be, a few days afterward, John Hughes, the assignee for the benefit of creditors under the assignment of Bacon & Co., indorsed the $5,000 note in his individual capacity, the note then being in possession of the bank. The bank duly protested the note for $6,616, given to secure the payment of the gold draft, and when the $5,000 note, now in controversy, became due, the Quebec Bank of Toronto brought its action upon it in this court.

To this action the defendants, Weyand & Jung, answered, and say, that "they, nor either of them, received any value or consideration whatsoever for the note, nor is plaintiff the *bona fide* owner or holder of said note, nor was said note for a valuable consideration assigned or delivered to plaintiff." And they deny that there is due from them, or either of them, anything to the plaintiff. And they aver that the note was obtained without consideration and held in fraud of their rights, and they ask that it be so adjudged, and that plaintiff be ordered to deliver up said note to them, and for such other relief as equity may require. After the filing of this answer and counter-claim by Weyand & Jung, the plaintiff replied, and then dismissed its action without prejudice, and instituted a suit upon said note in the Circuit Court of the United States, and the same is now pending there for the full amount of the note against Wey-

and & Jung. The plaintiff then, without filing any motion or demurrer, went to trial upon a reply to the answer and counter-claim, in which it denies all the allegations of the answer, and says "that the note sued on in the petition was given in part payment of a note of the said defendants, George M. Bacon & Co., for $6,616.35, upon the 7th day of February, 1870; that the said defendant, John Hughes, was indorser upon said note of $6,616.35, then about due, and that, in consideration of further time given to said George M. Bacon & Co. and said John Hughes, upon part of said note, the said defendants, George M. Bacon & Co., transferred the note sued on in the petition to this plaintiff at the day of its date, and the defendant, John Hughes, indorsed the same for value as aforesaid. The plaintiff had no knowledge of any alleged defense of the defendants, Weyand & Jung, to the said note, and received the same in good faith in the usual course of business. Plaintiff says that the amount recovered in this suit on said note is a credit upon said note of Geo. M. Bacon &. Co. for $6,616.35. The plaintiff says that it is now, and has been the *bona fide* holder and owner of the note sued on in the petition since the 7th day of February, 1870, at which time it was delivered to it. Wherefore plaintiff asks judgment against the defendants as in the petition.

We give the answer and reply in full, for the purpose of showing that the merits of the case were submitted to the court. The case was tried to the court without the intervention of a jury, and upon request of the plaintiff, the court found the facts and conclusions of law separately. The court found the facts as follows:

"1. That the promissory note in litigation in this action was made in the city of Cincinnati, by said Weyand & Jung, without consideration, merely for the accommodation of said payees, Geo. M. Bacon & Co., and there delivered by them to said payees upon this consideration, and no other, to wit., to be discounted by said payees at the Merchants' National Bank, in Cincinnati, to enable them to pay off and

Quebec Bank of Toronto *v.* Weyand & Jung et al.

take up a certain gold draft owned by the plaintiff, and held by said Merchants' National Bank as its agent, which said gold draft, with the indorsements thereon, is in these words and figures:

" ' $6,502.56.                                                   No. B. R. 70.

" ' Toronto, *November* 10, 1869.

" ' Twenty-five days after date, pay to the order of ourselves, sixty-five hundred and two 56-100 dollars in gold, value received.

" ' Thomas Clarkson & Co.

" ' To Geo. M. Bacon & Co., Cincinnati, Ohio.'

" Accepted : ' Geo. M. Bacon & Co.'

"Indorsed on back:

" ' Pay Quebec Bank, Toronto, or order.

" ' Thomas Clarkson & Co.'

" ' Pay the Merchants' National Bank, Cincinnati, or order, in collection account.

" ' Quebec Bank,

" ' *K. H. Bethune, Manager.'*

" 2. That, prior to the making of said note involved in this suit, said George M. Bacon & Co. had undertaken to make provision for the payment and taking up of said gold draft, by causing to be made and indorsed by one John Hughes the following paper writing, in form a promissory note, which, with the indorsement thereon, and protest attached thereto, is in these words and figures:

" ' Cincinnati, *December* 23, 1869.

" ' Forty-five days after date, we promise to pay to the order of Thomas Clarkson & Co. sixty-six hundred and sixteen 35-100 dollars in gold, at Merchants' National Bank, value received.   Due.

" ' $6,616.52-100.                               Geo. M. Bacon & Co.'

" Indorsed : ' John Hughes.'

" Without recourse.   ' Thomas Clarkson & Co.'

" And which note, so indorsed, the said plaintiff, by its agent, held, but refused to take in lieu and satisfaction of said gold draft, because Geo. M. Bacon & Co. had failed to

procure two responsible indorsers thereon, as they had agreed with the plaintiff to do.

"3. That said Merchant's National Bank, the said agent of the plaintiff, refused to discount said note of $5,000, in litigation herein, but learning that, by special consignment to them by the plaintiff's agent, at Toledo, Ohio, said Geo. M. Bacon & Co. had obtained possession of the barley mentioned in the said bill of lading attached to said gold draft, and had sold and received the money for it, said Merchants' National Bank, as plaintiff's agent, took said $5,000 note of said Geo. M. Bacon & Co., as collateral security only, upon the said prior indebteness of said Bacon & Co. to the plaintiff; and afterward without the knowledge or consent of said Weyand & Jung, procured the said indorsement of said John Hughes upon the same; and that the plaintiff, the said Quebec Bank of Toronto, still holds said note merely as such said collateral security.

"4. And the court further finds that, after the filing of said Weyand & Jung's said answer and counter-claim herein, the said plaintiff dismissed its said action in this court without prejudice, and instituted a suit upon said note, against them and said John·Hughes, in the Circuit Court of the United States within and for the Southern District of Ohio, where the same is now pending, and in which they are seeking to obtain a judgment for the full amount of said note against said Weyand & Jung; and that they replied in this court to said answer and counter-claim of said Weyand & Jung as by the record herein fully appears, the issue herein being fully tried upon said answer, etc., and said reply.

"5. That at the time the plaintiff, by its agent, received and accepted said $5,000 note, as such said collateral security, both it and its said agent were entirely ignorant of the fact that said note had been made by Weyand & Jung without consideration, and for the mere accommodation of said Geo. M. Bacon & Co., and did not know but that it had been given for a debt the said makers owed said

payees. And the court finds that the $5,000 note received and accepted by the Quebec Bank of Toronto, mentioned in this finding, was so received and accepted before the same became due.

" 6. That when said note was so taken as collateral security, said George M. Bacon & Co. were, in fact, insolvent, and have ever since continued insolvent.

" 7. That there was no fraud, in fact, on the part of the plaintiff or its agent in taking said note as collateral security, as aforesaid.

· " 8. That George M. Bacon & Co., on February 9, 1870, made an assignment, under the insolvent laws of Ohio, for the equal benefit of all their creditors, to said John Hughes, who duly accepted said trust so soon, as he was aware of the same, to wit, on February 10, 1870, and thereafter duly qualified according to law as such assignee.

" 9. It not being deemed necessary for the determination of this case, the court does not find, upon the evidence, whether said $5,000 note was received as collateral security, as aforesaid, before or after said assignment by said Bacon & Co. to said John Hughes."

And as conclusions of law, the court finds:

"*First.* That, under the law of Ohio, said Weyand & Jung are not liable to the plaintiff upon said note in any event, because the same was made by them without consideration, and purely for the accommodation of said George M. Bacon & Co., and was taken by the plaintiff as collateral security merely, for the said prior indebtedness of said Bacon & Co. to it; while, by and under the laws of the United States, as held and administered in said United States Circuit Court, they would, in such case, be liable to the plaintiff upon said note, and for the full amount thereof.

" *Second.* It not being necessary for the decision of the case, the court does not decide whether the writing of the name of John Hughes as an indorser upon said note, by the procurement of plaintiff, after it was delivered to

plaintiff, without the knowledge or consent of said Weyand & Jung, released them from liability thereon or not.

"*Third.* That, as the plaintiff is claiming the right, and seeking to recover the amount of said note from said Weyand & Jung, they are entitled to a judgment against said plaintiff for cancellation of said note as to them, with costs, and the same is hereby adjudged and decreed accordingly. And it is adjudged that the defendants go hence without day, and that they recover from the plaintiff their costs herein expended. To each and all of which said findings, and the judgment, the said Quebec Bank of Toronto excepts."

A motion for a new trial having been overruled, the plaintiff now prosecutes this proceeding in error, and assigns for error, among other things, the following :

1. That the court erred in finding, as a matter of fact, that the note of Weyand & Jung was received by the said Quebec Bank of Toronto as collateral security only, and that said finding is contrary to, and not sustained by, the evidence in said cause.

2. That the court erred because it had no jurisdiction to try the facts upon which it has rendered judgment in this cause.

3. That the court erred in its conclusions of law upon the facts found by said court.

4. That the court erred in giving judgment in favor of said Weyand & Jung; and that said judgment is contrary to the law and the evidence in said cause.

The other errors assigned are the usual assignments of error.

We will consider, first, the question of the jurisdiction of the court to try the facts upon which judgment was rendered. It is claimed by the plaintiff in error that the court erred in retaining this case for trial upon the answer and counter-claim and reply, after plaintiff below had dismissed its action ; that the answer averred no facts constituting a cause of action against the plaintiff in error ; so

that when the bank dismissed its action, the whole case was dismissed. Now, as claimed by the defendants in error, the entire answer is pleaded in the double aspect of a defense and counter-claim; and if this is a defective mode, it is only defective in form, and can only be attacked by motion. See case of *Lancaster Manufacturing Co.* v. *Colgate*, 12 Ohio St. 344.

The facts pleaded in support of the prayer of the counter-claim are:

1. That the note was executed by Weyand & Jung without any consideration.

2. That the plaintiff is not the *bona fide* owner and holder of said note.

3. That the note was not assigned or delivered to the plaintiff for a valuable consideration.

4. That the note was procured by plaintiff without any consideration.

5. That plaintiff fraudulently holds said note.

And defendants ask that the note be delivered up to them, etc.

If these allegations of the answer and counter-claim are admitted to be true, Weyand & Jung, it seems to us, have presented something substantial for the court to pass upon. But all these allegations are denied in the reply, thus raising a material issue; and in that reply the plaintiff again asks judgment against these defendants "as in the petition," thus referring to the petition, and rendering it necessary to examine it as a part of the reply, and thereby requesting the court, for this purpose, to consider the petition as still in court; that is, for the purpose of obtaining a judgment in favor of the plaintiff for the full amount of the $5,000 note, and interest and costs, the petition is still in the Superior Court of Cincinnati. But if the court should be of opinion that the judgment ought to be in favor of the defendants, or that the note should be canceled, then the petition and the whole case is to be considered to be in the Circuit Court of the United States. In other words, that

the plaintiff is willing to submit to the jurisdiction of this court if the judgment be in its favor; but if the judgment is to be the other way, then it prefers the United States court; or, in other words, again, it prefers two chances to one. We think, upon the pleadings, the court had jurisdiction.

But it is further claimed by the plaintiff in error, that the facts pleaded in the answer and counter-claim, even if proved, would not authorize the court to grant the relief prayed. for, and which the court did grant. That the general rule is that a court of equity will not interfere when the legal remedy is complete; and although there are exceptions to the rule, that this case does not fall within any of them; and that the defendants can make precisely the same defense to the action in the Circuit Court of the United States that they could make in the Superior Court of Cincinnati, and with the same facilities. In support of these views, the plaintiff cites *Geer* v. *Kissam,* 3 Edwards' Ch. 129; *Lewis* v. *Tobias,* 10 Cal. 574; and as to the class of cases where a court of equity will decree the surrender and cancellation of commercial paper, the case of *Peirsoll* v. *Elliott,* 6 Pet. 99, where Chief Justice Marshall cites the language of Chancellor Kent as follows: "Perhaps the cases may all be reconciled on the general principle, that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate; and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defense, not arising on its face, may be difficult or uncertain at law, or from other special circumstances peculiar to the case, and rendering a resort here highly proper, and clear of all suspicion of any design to promote expense of litigation."

In answer to this, it is to be remembered that under our code, the same court, in the same action, administers legal and equitable relief, and that it is a well-settled principle governing equitable jurisprudence, "that when a court of equity once obtains jurisdiction of a cause, it will not sur-

render such jurisdiction until it fully settles all the rights of the parties therein.    We think the true principles and rules governing the power of a court of equity to decree a cancellation of commercial paper, are stated by Story in his Equity Jurisprudence, sections 698–702.    The author says, section 699: "Where no discovery is sought, and the naked case, made by the bill, is for a mere delivery up or cancellation of the instrument, not averring any defect of proof, by simply stating that the instrument is void, there might be more color for some scruple in entertaining the bill.    Still, even in the latter case, the specific relief required being such as a court of law can not give, and yet the instrument being, from its very nature and its apparent validity, calculated to throw some doubt upon the title, or being capable of future misuse, the justice of a court of equity would seem to require, even under such circumstances, an interposition to prevent serious mischiefs."    And in section 700, the author says: "But whatever may have been the doubts or difficulties formerly entertained upon this subject, they seem by the more modern decisions to be fairly put at rest; and the jurisdiction is now maintained in the fullest extent.    And these decisions (citing them) are founded on the true principles of equity jurisprudence, which is not merely remedial, but is also preventive of injustice. · If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it; since he can only retain it for some sinister purpose.   .   .   .    While it exists, it is liable always to be applied to improper purposes; and it may be vexatiously litigated at a distance of time, when the proper evidence to repel the claim may have been lost or obscured; or when the other party may be disabled from contesting its validity with as much ability and force as he can contest it at the present moment."    And in section 701 it is said: "The whole doctrine of courts of equity on this subject is referable to the general jurisdiction, which it exercises in favor of a party, *quia timet*.    It is not confined to cases, where the in-

strument, having been executed, is void upon grounds of law or equity. But it is applied, even in cases of forged instruments, which may be decreed to be given up without any prior trial at law on the point of forgery."

These citations, and the cases there referred to, fully sustain the authority of the court upon the allegations of the answer and counter-claim, if found to be true, to decree the cancellation of the note sued upon. And this brings us to consider the only finding of fact by the court of which the plaintiff in error complains. It is assigned for error, that the court erred in finding as a matter of fact that the note of Weyand & Jung was received by the said Quebec Bank of Toronto as collateral security only, and that said finding is contrary to and not sustained by the evidence in said cause. As before stated, the testimony on this question is conflicting; but after carefully examining it, we have no doubt whatever that it fully warrants the finding of the court, and it would subserve no useful purpose to review it here. Indeed, it seems reasonable to suppose that the plaintiff himself must have been conscious of the weakness, if not of the fatal defect, of this part of his case, when, after seeing the answer and counter-claim of the defendants, he dismissed his action here and commenced proceedings in the Circuit Court of the United States, where, under the decisions governing that court, the same finding of fact, now objected to, would not result in the same conclusion of law. It is fair to infer that the plaintiff expected no other result, if he failed in his effort to withdraw the case wholly from this court. He did fail, for the reason that the defendants brought into this court a counter-claim, over which he had no power of dismissal.

But it is next assigned for error, that the court erred in its conclusion of law upon the facts found, and the only fact found to which objection is taken, is, as we have seen, the one just stated, to wit, that the bank took the note as

collateral security only. And this is the turning fact in the case.

The court found as matter of fact, that Weyand & Jung made the note in suit, without consideration, merely for the accommodation of George M. Bacon & Co., and delivered it to them upon this consideration and no other, to wit, to be discounted by said Bacon & Co. at the Merchants' National Bank, to enable them to pay off and take up a certain gold draft owned by the plaintiff. The object of Weyand & Jung was to sustain the credit of Bacon & Co., and this could only be done by providing for the payment or postponing the payment of the gold draft, or of the note which had previously been given by Bacon & Co. to secure its payment. Any other use of Weyand & Jung's note would have been a misappropriation of it as between Weyand & Jung and Bacon & Co., and no one, in that case, could acquire any better right in the note, as against Weyand & Jung, than Bacon & Co. had, unless it was received for value, before maturity, in the usual course of trade. If the bank received it without any consideration whatever, as the court found, not receiving it in part payment of the gold draft, nor in consideration of giving further time for its payment, but received it merely as collateral security for a pre-existing debt, leaving that debt, in all respects, as it was before, then the intention of Weyand & Jung, in giving the note, had not been carried out; there was a misappropriation by Bacon & Co., and as the bank gave no consideration for it, and therefore could lose nothing, the bank's position was no better than that of Bacon & Co., who, as to this note, had no cause of action against Weyand & Jung. And this is in accordance with the decision of our Supreme Court in the case of *Roxborough* v. *Messick et al.,* 6 Ohio St. 448, which has been the settled law in Ohio ever since. The syllabus of the case is:

"When the note of a third person is transferred, *bona fide,* before due, as collateral security, *and for value,* such as in consideration of a loan, or advancement, or a stipulation,

express or implied, of further time to pay a pre-existing debt, or in consideration of a change of securities of a pre-existing debt, or the like, the holder of such collateral will be protected from infirmities affecting the instrument before it was thus transferred.

"But when a debt is created, without any stipulation for further security, and the debtor afterward, without any obligation to do so, voluntarily transfers a negotiable instrument, to secure the pre-existing debt, and both parties are left, in respect to the pre-existing debt, in *statu quo*, no new consideration, stipulation for delay, or credit being given, or right parted with, by the creditor, he is not a holder of the collateral for value, in the usual course of trade, and receives it subject to all the equities existing against it at the time of the transfer."

This decision was followed in 7 Ohio St. 248; 9 Ib. 461; 14 Ib. 396; 16 Ib. 236; 19 Ib. 145; 20 Ib. 281; and 22 Ib. 398. And in the case of *Bramhall* v. *Beckett*, 31 Maine, 205, which was also a case upon accommodation paper, and is directly in point.

As we have said, Weyand & Jung, as soon as they gave the note, were interested in the commercial credit of Bacon & Co., for that credit was the only security they had for the repayment of the $5,000; and any disposition of the note which did not tend to keep that credit good, was a clear misappropriation of it, and a threatened loss to Weyand & Jung—a loss which actually happened; for Bacon & Co., failing to induce the bank to discount the note, or to take it in part payment of the gold draft, or to extend the time of its payment, made an assignment for the benefit of creditors.

We think, therefore, the conclusion of law, upon the facts found by the court, was warranted by the findings.

Other important questions, which might have arisen upon the evidence, and have been conclusive of the case, were presented to us in argument; but as the court below, in its findings of fact, did not deem it necessary to pass upon

them, and as we are restricted to the findings made and the conclusion of law thereon, we can not now consider them, as the judgment of the court must be sustained for the reasons already given.

We find no error in the record, and the judgment must therefore be affirmed.

Judgment affirmed.