## CHARLESTON.

LILLIAN G. GARDNER *et al.* v. THE BUCKEYE SAVINGS & LOAN COMPANY *et als.*

(No. 6578)

A. S. BERRY *v.* THE BUCKEYE SAVINGS & LOAN COMPANY *et als.*

(No. 6579)

A. F. McCUE *v.* THE BUCKEYE SAVINGS & LOAN COMPANY *et als.*

(No. 6580)

ALICE L. BENNETT *et als.* v. THE BUCKEYE SAVINGS & LOAN COMPANY *et als.*

(No. 6581)

Submitted March 4, 1930. Decided March 1, 1930.

674

*Steptoe & Johnson* and *James M. Guiher*, for appellants.
*Will E. Morris, W. G. Stathers, A. M. Cantrell, H. N. Kramer,* and *K. H. Keeney,* for appellees.

WOODS, JUDGE:

These four suits were instituted for the purpose of removing clouds from and quieting titles to certain residential properties in the city of Clarksburg. The several appeals are prosecuted from decrees of the circuit court of Harrison county sustaining demurrers to and dismissing the bills filed herein. As the causes are similar, we will confine ourselves to the allegations of the McCue bill.

The bill, as amended, alleges in substance that one Hornor and wife, on the 14th of September, 1920, obtained a loan of $6,000.00 from The Buckeye Savings & Loan Company, an Ohio corporation, which for many years prior to the suit had done a very substantial part of its business in and about the city of Clarksburg, and at the same time executed a deed of trust to Sheets, as trustee, to secure said loan, which deed of trust was duly recorded; that in 1921 Hornor and wife sold the property to McCue, the latter assuming the payment of the loan; that McCue obtained a loan from another concern and paid off the Buckeye loan, and as evidence and in acknowledgment thereof, the Buckeye Company delivered McCue, through said Sheets, its duly authorized agent, a release bearing date April 21, 1923, which was recorded March 24, 1925; that Sheets absconded in August of 1926, on ac-

count of irregularities of accounts with the Buckeye Company; that shortly thereafter a representative of the Buckeye Company called upon and notified McCue that it denied the validity of said release of April 21, 1923, on the alleged ground that said release was improperly and fraudulently executed and delivered to McCue, that said Hornor loan had not been paid off and satisfied, that the said release was not binding on the Buckeye Company, and that said deed of trust still was in full force and effect; that said Buckeye Company, since Sheets' disappearance, has questioned and denied the validity of many other such releases, and that such contention is well known to the public generally in and about the city of Clarksburg; that a number of chancery suits are now pending wherein the Buckeye Company is challenging, attacking and contesting the validity and effect of payments made by property owners residing in and about Clarksburg to said Sheets, as its local agent, representative and attorney, as well as the validity and effect of releases of its trust deeds securing said loans, and that it is seeking and attempting to sell the properties of such borrowers under said deeds of trust, notwithstanding the execution, delivery and recordation of said releases; that such releases constitute and are, in the absence of an adjudication of their validity, serious clouds upon the titles of plaintiff and others; that said release to plaintiff is valid and binding, but on account of the fact that defendant openly and publicly disputes the validity of it and other like releases, and the further fact of uncertainty and distrust in the community, a serious and substantial cloud is thrown upon plaintiff's title, ownership and possession, and that in absence of remedy save in equity the present suit is instituted for the purpose of having cloud on title removed and title quieted, through a confirmation of said release and an adjudication of its validity, as well as by a cancellation of the said deed of trust securing said Hornor loan;. that at the time of the assumption, as well as the payment of said loan, plaintiff did not know of any note or other evidence of said loan, other than the said trust deed securing the same; that the exact description of note, whether negotiable or non-negotiable, is to complainant unknown, and that defendant should be com-

pelled to produce and surrender said note for cancellation. The bill ends with the prayer that the said Hornor note and loan be adjudged to have been fully paid off and discharged and the deed of trust securing the same be declared to be without force or effect as a lien upon said property, and that the cloud thereby created and existing upon complainant's title to said real estate may be cancelled and removed; that the release delivered to complainant be confirmed and be adjudged valid and binding by this Court; that Buckeye company be ordered to produce and surrender to complainant for cancellation the said note evidencing the said Hornor loan.

The defendant in the court below challenged the sufficiency of the bill upon two general grounds: *first*, that there is want of jurisdiction in the court to entertain the bill; and, *second*, that there is want of equity in the bill. These grounds constitute the basis of its attack on the pleading in this Court. Of course, the certainty of plaintiff's right must be determined in the first instance by the allegations of the bill. To quiet title to realty, or to remove an existing cloud, or to prevent a threatened cloud, is an ancient and well established head of equity jurisprudence. The broad grounds on which equity interferes to remove a cloud on title are the prevention of litigation, the protection of the true title and possession, and because it is the real interest of both parties, and promotive of right and justice, that the precise state of the title be known if all are acting bona fide. 32 Cyc., p. 1306. We have held that such power of a court of equity to grant relief is independent of any statute conferring jurisdiction, and rests on general equity principles and practices. *Tennant* v. *Fretts*, 67 W. Va. 569; *Gilbert* v. *McCreary*, 87 W. Va. 56. With reference to this jurisdiction in equity, this Court has said that there is a distinction between removing a cloud and quieting title, although such distinction is somewhat refined, but for the latter purpose that there is a distinct ground for equity jurisdiction to remove cloud from one in possession under the better title, although he has not first vindicated it at law. *Whitehouse* v. *Jones*, 60 W. Va. 680. Reverting to the question of jurisdiction, we find that Judge Story, in speaking of delivery up, cancellation or rescission of agree-

ments, securities, deeds and other instruments, says in effect that it is obvious that the jurisdiction exercised in cases of this sort is founded upon the administration of a protective or preventive justice. The party is relieved upon the principle that such agreements, securities, deeds or other instruments may be vexatiously or injuriously used against him when the evidence to impeach them may be lost, or that they may throw a cloud or suspicion over his title or interest; and, whatever may have been the doubts formerly entertained upon this subject, they may be fairly said to be put at rest and the jurisdiction is now maintained in the fullest extent. 2 Story's Equity Jur. (13th Ed.) section 694. This measure of equity jurisdiction has been approved and applied as the correct one in our decisions so often that it may be held to be settled law. *Smith* v. *O'Keefe,* 43 W. Va. 172. The plaintiff seeks to cancel the deed of trust and confirm the release thereof, which has been admitted to record. The defendant rejoins that, according to the bill, no cloud appears on the plaintiff's title, as the deed of trust so far as the public record discloses has been fully satisfied and released.

What is a cloud? Black's Law Dictionary defines it to be an outstanding claim or incumbrance which if valid would affect or impair the title of the owner of a particular estate, and which apparently on its face has that effect, but which can be shown by extrinsic proof to be invalid or inapplicable to the estate in question. In 32 Cyc. 1314, the general rule is stated: "A cloud, such as equity will undertake to remove, is the semblance of a title, either legal or equitable, or a claim of an interest in lands appearing in some legal form, but which is in fact unfounded, and which it would be inequitable to enforce." The attributes generally recognized as necessary to create a cloud are that the claim must be (1) apparently valid, and (2) capable of embracing title. The first element includes a situation where the instrument or claim of defendant appears to be valid on its face, but for some reason or matter that can only be shown by extrinsic evidence is in fact void. The foregoing elements constitute the requisites of a cloud in this jurisdiction, with the exception that it need not be necessarily valid on its face. *White-*

*house* v. *Jones, supra.* In this exception we have gone counter to the weight of authority. The deed of trust is valid on its face, but the cases· hold that where its invalidity may be made to appear by extrinsic circumstances, it is a cloud on title justifying the intervention of equity, and this is so where it was a valid lien in its inception, or since has ceased to be a valid lien. *Carter* v. *Taylor,* 3 Head (Tenn.) 30; *Kelly* v. *Martin,* 107 Ala. 479; *McCauley* v: *Coe,* 150 Ill. 311; *Stokes* v. *Houghton,* 16 N. Y. App. Div. 381. Akin to the last ·mentioned principle, a court of equity has jurisdiction to cancel an instrument which, although originally valid, has, by payment, satisfaction, or some other cause legal or equitable, become invalid or *functus officio.* *Cannon* v. *Ballard,* 62 N. J. Eq. 383; *Lewis* v. *Tobias,* 10 Cal. 574; *Dorman* v. *McDonald,* 47 Fla. 252; *Fitzmaurice* v. *Mosier,* 116 Ind. 363; *Wilson* v. *Getty,* 57 Pa. 266; *Hamilton* v. *Cummings,* 1 Johns. Ch. (N. Y.) 517. The extrinsic proof relied on in this case is that the debt secured by the trust deed has been fully paid off and discharged.

But, the defendant points to the release of record, and says the plaintiff maintains in his bill that it is a valid release. It asks the plaintiff to admit his doubts as to the validity of the release, allege payment and ask for the execution of a release valid beyond question. Is the plaintiff required to cast doubt on the validity of the release in order to obtain relief under the circumstances here? To do so substance would have to yield to form. He avers that the defendant insists that the release is not binding on it on the ground that it was improperly and fraudulently executed and delivered to the plaintiff. Such assertions are augmented by the fact that Sheets, the generally recognized agent for the Buckeye Company in and about Clarksburg, had absconded because of alleged irregularities and misappropriation of monies in the transaction of the business of the Buckeye Company. Not only does the defendant go to this extent, but it goes further and maintains that the lien of the deed of trust is in full force and effect. Not only is the plaintiff's release attacked as fraudulent and void, but divers others in the same community and in the same situation as plaintiff have

been assailed by it by suit or claim. Recurring to our statement of principles where equity will entertain suit to quiet title, one is that it may interfere to prevent threatened cloud on title, as well as to remove an existing one, where there appears to be a determination to create such a cloud and the danger is not merely speculative. *Sanders* v. *Yonkers,* 63 N. Y. 489. Here the Buckeye Company is asserting the validity of the deed of trust. This instrument is a distinct link in the plaintiff's title. There is imminent danger of the holder of the trust deed using it as a means to bring injury to the plaintiff. It is patent that the marketability of his property is impaired thereby. While on the public records it is not a cloud, as we have said, under the circumstances here pleaded it becomes a threatened cloud—technically a cloud—such as a court of equity will remove. The step necessary to make it so lies wholly in the power of the defendant. It stands with this weapon in its hand and may strike the blow when it chooses. Nor is it any answer that it has not struck the blow although it has had several years to do it. That only intensifies the injury and danger to the plaintiff. The blow may be struck when the facts upon which the plaintiff rests his defense may be no longer capable of complete proof or shall have become involved in the obscurities of time. This is not the verbal claim or assertion of ownership that is held in the books not to be a cloud on the title. The plaintiff does not seek here to remove a mere verbal claim or oral assertion of title, but to remove an instrument of writing which appears on the record and thereby casts doubt upon the validity of the record title by reason of extraneous existing circumstances alleged in the bill. So, it is more than a verbal claim. It is against conscience, that one party (as here) should persist in holding a deed or other instrument against another of which he can make no possible use except as a means of embarrassing his adversary. The fact that the Buckeye Company intends to do so is accentuated by the fact that it is already asserting the same claim against others in the same community under like circumstances. Why should a court of equity not exercise its power to direct the cancellation of a paper, and the obligation on which it is based, that

justice requires should not be enforced? Must the plaintiff await the pleasure of the Buckeye Company to bring suit upon the note? Has he an adequate remedy at law? The remedy or defense which will oust an equity court of jurisdiction must be as complete and as adequate, as sufficient and as final, as the remedy in equity, or else the latter court retains jurisdiction; and it must be a remedy which may be resorted to without impediment created otherwise than by the act of the party, and the remedy of defense must be capable of being asserted, without rendering the party asserting it liable to the imposition of heavy penalties or forfeitures, arising other than by reason of his own act. · 4 R. C. L., 491; *Myler* v. *Insurance Company,* 64 Okla. 293. To remit the plaintiff to a suit at law for slander of title, as defendants contend, is to subject him to the uncertainties of a personal judgment sounding in damages. Nor can he sue in ejectment because he is in possession of the land. The object to be attained in a suit to quiet title is *finally* to determine, as between the parties, all conflicting claims to property, and to decree to each such interests or estate therein to which he may be entitled.

No adjudicated cases directly involving the same facts as here have been cited by counsel for either side, nor have we from a careful search found any. That it is an unusual case does not necessarily cast doubt upon equity jurisdiction. It is the proud boast of all lovers of justice that for every wrong there is a remedy. The law not being equal to this task, equity was brought into being for the accomplishment of this purpose. The condition of affairs constituting the element of disturbance complained of here was occasioned solely by the acts of the defendants. It is just such an intolerable situation as equity will remove. There is no good reason why a court of equity should not exercise its power by finally establishing the legal relations of the parties to this litigation. The interests of both parties would seem to demand it. Such conclusion, we believe, is not only well supported by the great weight of modern authority but rests upon sound principles of remedial justice.

The final decrees in the several appeals must be reversed and the causes remanded.

*Reversed and remanded.*