## HUMBLE OIL & REFINING CO. et al. v. SUN OIL CO. et al.

### No. 13312.

United States Court of Appeals
Fifth Circuit.

Sept. 20, 1951.

708

Robert H. Kelley, Nelson Jones, Charles E. Shaver and R. E. Seagler, all of Houston, Tex., Jacob S. Floyd, Alice, Tex., Gordon Boone, Allen V. Davis, Corpus Christi, Tex., for appellant.

Carlton R. Winn, Dallas, Tex., Jesse P. Luton, Jr., Asst. Atty. Gen. of Texas, Price Daniel, Atty. Gen. of Texas, J. W. Timmins, and Martin A. Row, Dallas, Tex., for appellee.

Before HOLMES, McCORD, and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

One argument in support of the petition for rehearing is based on the contention that the defendants below were entitled to a jury trial as a matter of federal constitutional right. We say based on the contention, because such a trial was granted and evidence presented for many weeks before the court and a jury. At the conclusion of the evidence, the trial court determined that there were no issues of fact to go to the jury. The question arose below upon a motion to strike findings of fact. The appellants contend that this is not a suit in equity but an action at law to determine the title and recover possession of land. The effect of the findings complained of, it is said, is to impose upon defendants an undue burden in the appellate court. We met this issue in our opinion by deciding that jurisdiction over this controversy is inherent in equity, and that the parties were not entitled to a jury trial as a matter of right.

The plaintiff alleged in its complaint that, at the time of suit, it was in the actual possession of all of said land. The defendants denied that plaintiff was in possession of "each of said tracts," but admitted that plaintiff had a camp located on said land and had done some surveying thereon. Later, the answer denied that the plaintiff

was actually in possession of any of said land except the small area surrounding said camp. The defendants did not allege that they were in possession of any of the controverted area, but only that it was accreted land, above mean high tide, on which they had mineral leases. Neither side alleged that the defendants were in possession of the land; and, therefore, Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873, relied on by appellants, does not apply.

The controlling decision on this point, it seems to us, is Holland v. Challen, 110 U.S. 15, 3 S.Ct. 495, 28 L.Ed. 52, which was a bill in equity to quiet title. There, a Nebraska statute dispensed with the general rule of courts of equity that, in order to maintain a bill to quiet title, it was necessary that the complainant should be in possession of the land, or that his title thereto should have been established by a legal action. The Supreme Court held that it is always competent for the legislative power to remove limitations imposed upon the exercise of jurisdiction inherent in courts of equity; that while it is true that state statutes cannot enlarge or contract the jurisdiction of courts of the United States, yet an enlargement of equitable rights may be administered by the federal equity courts as well as by the state courts; that jurisdiction to relieve the holders of real property from vexatious claims, casting a cloud upon their title, and thus disturbing them in its peaceable use, is inherent in a court of equity; and that, though conditions to its exercise have at different times been prescribed by that court, both in England and in this country, they may at any time be changed or dispensed with by the legislature without impairing the general authority of courts of equity. Citing Pomeroy's Equity Jurisprudence and the Broderick's Will case, 21 Wall. 503, 520, 22 L.Ed. 599, the court observed that the equitable rights of parties had simply been enlarged by the statute, not changed in character; and that, so long as the equitable rights remained, an enlargement of equitable rights effected by a state statute might be administered by the federal courts as well as by the courts of the state, because "much equitable jurisdiction consists of better and more effective remedies for attaining the rights of the parties." Then, to explain its approval of the wisdom of such legislation, the court said, 110 U.S. at pages 24 and 25, 3 S.Ct. at page 501: "No adequate relief to the owners of real property against the adverse claims of parties not in possession can be given by a court of law. If the holders of such claims do not seek to enforce them, the party in possession, or entitled to the possession,—the actual owner of the fee,—is helpless in the matter, unless he can resort to a court of equity.

"It does not follow that by allowing in the federal courts a suit for relief under the statute of Nebraska, controversies properly cognizable in a court of law will be drawn into a court of equity. There can be no controversy at law respecting the title to or right of possession of real property when neither of the parties is in possession. An action at law, whether in the ancient form of ejectment or in the form now commonly used, will lie only against a party in possession. Should suit be brought in the federal court, under the Nebraska statute, against a party in possession, there would be force in the objection that a legal controversy was withdrawn from a court of law; but that is not this case, nor is it of such cases we are speaking. Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises, and generally that title will be exhibited by conveyances or instruments of record, the construction and effect of which will properly rest with the court. Such, also, will generally be the case with the adverse estates or interests claimed by others. This was the character of the proofs establishing the title of the complainant in Clark v. Smith, supra [13 Pet. 195, 10 L.Ed. 123]. But should proofs of a different character be produced, the controversy would still be one upon which a court of law could not act. It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved."

In appellants' brief, in support of their petition for a rehearing, it is said: "Under Texas law Sun could maintain a trespass to try title suit without prior establishment of title and could obtain in that suit all the relief which could be granted by a court of equity; but the suit would be (as is the present suit) an action at *law*. There is no Texas statute which relieves Sun of the burden of prior establishment of title in an equity suit." Evidently, the appellants contend that, under Article 7364 of the Revised Civil Statutes of Texas, enacted in 1840, this suit cannot be regarded as anything but a legal action of trespass to try title. Said article provides that all fictitious proceedings in the action of ejectment are abolished, and that the method of trying titles to lands, tenements, or other real property, shall be by action of trespass to try title. The Texas Supreme Court holds that the purpose of this statute is to provide a remedy of vesting and divesting the title to real estate in all cases where the right, title, interest, or possession, of land may be involved, and that the remedy was intended to be sufficiently broad and effective to embrace all character of litigation that affected the title to real estate.

The appellants contend that Texas has not enacted any statute allowing bills to remove clouds to be maintained without prior establishment of legal title in ejectment, but they cite Texas cases and quote from decisions of the Supreme Court of that state to sustain the proposition that the action of trespass to try title serves the purpose not only of an action of ejectment but of determining all question of title as fully and completely as it could be by a suit to quiet title. Hence, the court said, seldom if ever, under the Texas practice could a suit to quiet title become necessary. The reason for this, we think, is that the Texas statutory action of trespass to try title is a blended legal and equitable remedy. It serves the purposes of both an action of ejectment and of a bill *quia timet*. Both legal and equitable rights and remedies are afforded not only in the same court but in a single action.

While Texas has not specifically relieved plaintiffs in an equity suit of the burden of prior establishment of title, it has created the right in land owners not in possession to institute legal proceedings (against persons not in possession) to obtain repose against repeated litigation by removing existing causes of controversies as to titles without prior establishment thereof; and, therefore, the right embraces cases where a bill *quia timet* to remove a cloud upon title would lie. 110 U.S. 18, 3 S. St. 495, 28 L.Ed. 52. Therefore, what Texas has done so sweepingly embraces what Nebraska did specifically in the statute under review in Holland v. Challen, supra. The Texas statute, like Nebraska's, authorizes suit in this class of cases, without reference to any previous judicial determination of the validity of the plaintiff's title and without reference to his possession. Under the Texas statute, any person claiming title to real estate, whether in or out of possession, may maintain an action of trespass to try title against one who claims an adverse estate or interest in it, for the purpose of determining such estate and quieting the title. Thus the equitable rights of parties in Texas claiming the legal title to real property are simply enlarged by said article 7364, albeit the enlargement of said equitable rights is effected in the form of a remedial proceeding. 110 U.S. 24, 3 S.Ct. 495, 28 L.Ed. 52.

■■■ A state, by prescribing an action at law to enforce rights of an equitable nature, cannot oust a federal court of its equitable jurisdiction. Sheffield Furance Co. v. Witherow, 149 U.S. 574, 13 S.Ct. 936, 37 L.Ed. 853. In determining the adequacy of a legal remedy to defeat equity jurisdiction, the federal courts are guided by the historic distinction between law and equity when the Judiciary Act of 1789, 1 Stat. 73, was adopted. Stratton v. St. Louis S. W. R. Co., 284 U.S. 530, 52 S.Ct. 222, 76 L.Ed. 465. Also it must be a remedy at law in the federal courts to prevent a federal court of equity from assuming jurisdiction. Whether a plaintiff has a plain, adequate, and complete, remedy at law depends not upon the law at the time the suit is brought, but upon what it was when the Constitution of the United States drew the line of demarcation between legal and

equitable jurisdiction. In most of the States, legislation has now provided legal remedies for many wrongs that formerly could have been redressed in courts of equity alone. The existence of a statutory remedy not cognizable by the federal courts cannot oust federal equity jurisdiction. City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628,

In Texas, there is not any clear line of distinction between law and equity. Although the principles of the common law have been adopted by statute, yet they are modified by equity; and the courts of Texas have full jurisdiction to give effect to any principles of equitable jurisprudence that were developed by the English court of chancery in 1789. All rights and remedies are administered together by one civil action and in the same proceeding. Ogden v. Slade, 1 Tex. 13, 15; Coles v. Kelsey, 2 Tex. 541, 553, 47 Am.Dec. 661; Smith v. Clopton, 4 Tex. 109, 113; Carter v. Carter, 5 Tex. 93, 100; Wells v. Barnett, 7 Tex. 584, 586, 587; Newson v. Chrisman, 9 Tex. 113, 117; Smith v. Smith, 11 Tex. 102, 106; Purvis v. Sherrod, 12 Tex. 140, 159, 160; Spann v. Sterns' Administrators, 18 Tex. 556; Seguin v. Maverick, 24 Tex. 526, 532, 76 Am.Dec. 117; Jones v. McMahan, 30 Tex. 719, 728; Herrington v. Williams, 31 Tex. 448, 460, 461; Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223, 228; Rogers v. Daniel Oil & Royalty Co., 130 Tex. 386, 110 SW.2d 891, affirming, Tex. Civ.App., 105 S.W.2d 476; 17 Texas Jurisprudence, Equity, p. 6, Sec. 3, et seq; 32 Texas Jurisprudence, Parties, p. 18, Sec. 11; 17 Texas Jurisprudence, Equity, p. 36, Sec. 34; 26 Texas Jurisprudence, Jury, p. 576, Sec. 13, et seq.

As a general rule, whenever a court of equity, as part of its inherent powers, had jurisdiction to grant any particular relief, such jurisdiction is not lost or abridged because the courts of law of the same state subsequently may have acquired the power to grant the same relief in the same kind of cases and under the same facts or circumstances. This rule has been applied with reference to the jurisdiction of equity courts in suits to quiet title. McArthur v. Hood Rubber Co., 221 Mass. 372, 109 N.E. 162;

Chafee & Simpson, Cases on Equity, 854; Hutchinson v. Dennis, 217 Pa. 290, 66 A. 524; Am.Jur., Vol. 44, p. 3 et seq., Quieting Title & Determination of Adverse Claims; 5 R.C.L. p. 647, Sec. 5. Cf. Kelly v. Lehigh Min. & Mfg. Co., 98 Va. 405, 36 S.E. 511, 81 Am.St.Rep. 736.

In Clark v. Smith, 13 Pet. 195, 10 L.Ed. 123, the court said that, when "investigating and decreeing titles" in this country, we must deal with them as we find them and accommodate our modes of procedure to the nature of the case and the character of the equities involved, so as to give effect to state legislation and state policy, not departing from what legitimately belongs to the practice of a court of chancery. Similarly, where a state statute confers the right to have a mortgage cancelled for usury without offering to repay the loan, this right must be enforced by a federal court of equity, where the land was situated and the contract executed in that State; and it makes no difference that the general principles of equity require the complainant to do equity by repaying or offering to repay what was actually due. Missouri, Kansas & Texas Trust Co. v. Krumseig, 172 U.S. 351, 19 S.Ct. 179, 43 L.Ed. 474. A statute, giving the right to maintain a suit to cancel as a cloud upon title a deed void upon its face, will be administered by the federal courts of equity sitting in that state, although the general principle of courts of equity is that a deed void on its face does not cast such a cloud upon title as courts of equity will undertake to remove. Reynolds v. First Nat. Bank, 112 U.S. 405, 5 S.Ct. 213, 28 L.Ed. 733; Cowley v. Northern Pac. Co., 159 U.S. 569, 16 S.Ct. 127, 40 L.Ed. 263. So a statute, conferring the substantive right to set aside by action in the courts a will that is forged or fraudulently procured, may be administered by a federal court of equity, although no such jurisdiction exists in the absence of such a statute. In re Broderick's Will, 21 Wall. 503, 22 L.Ed. 599. In the just-cited case the court said that, so long as the equitable rights remain, an enlargement of such rights may be administered by the federal courts as well as by the courts of the state. See also Olcutt v.

Bynum, 17 Wall. 44, 21 L.Ed. 570, where a court of equity of the United States was held to be necessarily bound by a local statute; but where the nature of the right is such as to violate the provisions for trial by jury, in order that it may be enforced, there can be no administration of the right in the federal courts of equity. Cates v. Allen, 149 U.S. 451, 13 S.Ct. 977, 37 L.Ed. 804; Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358. In brief, just as there is no common law of the United States in matters under the dominion of the states, there is no substantive equity law of the United States, but it is the substantive equity law of each particular state. Guffey v. Smith, 237 U.S. 101–120, 35 S.Ct. 526, 59 L.Ed. 856, illustrates beautifully the difference between substantive and procedural rights in equity. It held that, in Illinois, neither ejectment nor any other adequate remedy at law could be maintained by one holding an oil and gas lease against another lessee claiming under a later lease.

■ The bounds of the equitable jurisdiction of the United States Courts, being fixed by the constitution, can neither be extended nor restricted by state legislation, Mississippi Mills v. Cohn, 150 U.S. 202, 14 S.Ct. 75, 37 L.Ed. 1052; but the federal courts may avail themselves of any new equitable remedy for the enforcement of a right that is equitable in its nature. The courts have imposed a limitation upon the exercise of this power by declaring that to maintain a bill to quiet title it is necessary that the plaintiff be in possession of the property; and, in most cases, that his title thereto shall have been established at law or be founded on undisputed or long continued possession; but it is competent for the legislative power of the states to remove such limitation, because it was not created by a federal statute or constitutional provision. When however, the defendant is in possession and the plaintiff has a good legal title, the latter has a plain, adequate, and complete remedy at law and no state statute will entitle him to proceed in a suit of an equitable nature. Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873. But where the lands are wild and unoccupied, neither party

being in possession, and the ancient limitations upon the right to maintain a bill to quiet title have been sufficiently removed by state legislation, a suit in equity to quiet title to such real estate may be maintained in the federal courts. Holland v. Challen, supra. Such enforcement in the federal courts of new equitable rights is subject to the qualification that it must not impair any right conferred, or conflict with any inhibition imposed, by the Constitution or laws of the United States. Henrietta Mills v. Rutherford County, 281 U.S. 121, 127, 50 S.Ct. 270, 74 L.Ed. 737.

■ The removal of a cloud by a bill in the nature of a bill *quia timet* is a well-established ground of equitable jurisdiction, and may be resorted to under proper circumstances even where the legal title is involved, and although it may not have been previously established by an action at law. 17 Encycl. Plead. & Practice, 278. It is not to be exercised where there is an adequate legal remedy, but that is not the case where the moving party is in possession, and so is not in a position to protect his title by legal action. Wilmore Coal Co. v. Brown, C.C., 147 F. 931, 946, affirmed 3 Cir., 153 F. 143, certiorari denied 209 U.S. 546, 28 S.Ct. 758, 52 L.Ed. 920, citing numerous authorities, including Sharon v. Tucker, 144 U.S. 533, 12 S.Ct. 720, 36 L.Ed. 532. Appellants argue that Sun was not in possession of the area sued for, but the record shows that it had such possession as the character of its leasehold interest entitled it to exercise. Moreover, the question of plaintiff's possession, as alleged in its complaint, was for the trial court in determining the equitable nature of the action, on which question depended the issue as to whether the plaintiff-appellee was entitled to a trial by jury as a matter of right. Annotations: 117 A.L.R. 9, 51. See also Thomson v. Locke, 66 Tex. 383, 1 S.W. 112, 113, to the effect that the rule contended for by appellant has no application in Texas. Also, a recognized exception to the rule urged by appellant is stated in 51 C.J. 148, Sec. 22.

■ Whether or not the parties were entitled to a jury trial in this case as a matter of right depends upon whether the

plaintiff had a plain, adequate, and complete remedy at common law to recover these leasehold estates as of the time of the adoption of the Judiciary Act on September 24, 1789, or the Seventh Amendment on December 15, 1791. It is clear that the common law action of ejectment would not lie as of either date, because the defendants are not in possession. The Federal Rules of Civil Procedure, 28 U.S.C.A., abolished all formal distinctions between actions at law and suits in equity, but they did not abolish the difference between substantive legal and equitable rights. The distinction in substance between law and equity is thrice recognized in the federal constitution, viz.: in the second section of Article Three; in the Seventh Amendment; and in the Eleventh Amendment; but, as a practical matter in this case, the sole importance of the distinction is with respect to the preservation of the defendants' right of trial by jury, which is contained in the Seventh Amendment.

 The federal constitution reserved to the states at least as much legislative power to alter equitable rights as it did legal rights; in fact, land law has always been deemed a matter of local sovereignty; this was true even under Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865. Consequently, the states have the same power to abolish limitations upon the equitable rights of land owners as they have to abolish the fellow servant rule or the doctrine of assumption of risk, which limited the rights of injured employees at common law. The question here, so far as it relates to the right of trial by jury, is whether the State of Texas has enlarged the class of cases in which relief was formerly afforded by a court of equity in quieting the title to real property. We think it has and that such equitable rights have not been changed in character. This has been effected in the form of the remedial proceeding of trespass to try title, which is a statutory action in which the title, as well as the right to possession, is determined and as fully settled as it could be by a suit in equity to quiet title. Whether the parties are entitled to a jury in this case depends

upon its essential character and purpose. If it is a common law action of ejectment, or one in the nature of ejectment, wherein the principal purpose is to establish the legal right to possession and to obtain actual possession thereof, they are entitled to a trial by jury; but, in our opinion, this is not the nature and purpose of the suit.

The holder of these leasehold estates is not seriously concerned about the actual possession of the surface of the land, but is seeking repose for its title to the minerals beneath the surface. Admittedly, it already has its camp on the land; but its title to the minerals in place, probably ten thousand feet below, needs to be quieted. No common law action that existed in 1789, or statutory action in the nature of ejectment or trespass at this time in Texas, can grant the full, adequate, and complete relief that must be had to warrant the enormous expenditures necessary for development of these great natural resources. Undoubtedly, as a foundation for the relief sought, the plaintiff must show that it has a legal title to the minerals in place, and the right to drill for them. Its leases from the State, and its proof as to the submerged character of the land, made a *prima facie* case in its behalf under our announcement of the applicable local law. The burden of going forward with the evidence then shifted to the defendants to show that the land had accreted to them; this presented an issue of fact which would have been for the jury if it had arisen in an action of ejectment, trespass, or other common law action; but, since it arose in a suit of an equitable nature, wherein only equity could grant adequate relief, the aid of a jury was purely discretionary. In Holland v. Challen, supra, the court said, 110 U.S. at p. 25, 3 S.Ct. at page 501, 28 L.Ed. 52: "It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law."

 The importance of this legal issue did not escape the notice of the trial judge, who suggested its submission to the jury, but neither side availed itself of the suggestion, both urging that only questions of law were presented. Sun's attorney

went so far as to admit that, if he was not right on the law, "this land is accreted land and the defendant is entitled to judgment as a matter of law." The attorney for the State promptly rejected the stipulation, and the court below disregarded it as not having become effective. Although the State's petition to intervene has been denied in this court, we think, in justice to it as an absent party, the admission of Sun's attorney on a mixed question of law and fact should not be given retroactive effect. The statement was made after the close of all the evidence; no proof was withheld by the appellants on account of it; and the discharge of the jury was not a prejudicial event but was desired and urged by both sides, though for different reasons. Not every statement made by counsel casually, or in the heat of argument, or in colloquy with his adversary, is binding upon this client. It must have been deliberately made for the purpose of being used at the trial as a substitute for legal evidence of the fact. Beattie Mfg. Co. v. Gerardi, Mo.Sup., 214 S.W. 189, 192; 1 Greenleaf on Evidence, Sec. 205; 1 Enc.Ev. 467; 31 C.J.S., Evidence, § 381, page 1171. Cf. Platt v. U. S., 10 Cir., 163 F.2d 165, wherein the court said that it was doubtful if the statement by appellant's attorney in respect to the matter could be construed as a stipulation as to a finding of fact, but, in any event, that parties may not stipulate the findings of fact upon which conclusions of law and the judgment of the court are to be based; that parties may by stipulation establish evidentiary facts to obviate the necessity of offering proof, but based thereon the court must itself find the ultimate facts upon which the conclusions of law and the judgment shall rest.

In Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722, the court says that the stipulation is obviously inoperative if it is to be treated as an agreement concerning the legal effect of admitted facts, since the court cannot be controlled by agreement of counsel on a subsidiary question of law; that if the stipulation is to be treated as an attempt to agree, for the purposes of review only, that what are the facts shall be assumed not to be facts, a moot case is presented; that the duty of every judicial tribunal is limited to determining rights that are actually controverted in the case before it; and that no stipulation of parties or counsel can enlarge the power or affect the duty of the court in this regard. The court, therefore, treated the stipulation as a nullity. This principle was adopted by the Supreme Court of Texas in Reynolds v. McMan Oil & Gas Co., 11 S.W.2d 778, 785–7, wherein the court said that expressions of opinions as to the law of the case by counsel are not binding upon either his client or the court, citing 2 R.C.L. p. 989; also 25 R.C.L. 1098.

The appellants now are not complaining of the discharge of the jury in itself, but of the court having made findings of fact after having decided the case on the undisputed facts. Fed. Rules Civ.Proc. rule 52(a), 28 U.S.C.A. provides that, in all actions tried upon the facts without a jury, or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law. Moreover, after urging the elimination of the State as a party, the appellants in their original brief urged this court to decide the case on the merits if possible. In brief and oral argument, they stated that the trial was lengthy, arduous, and expensive; that the case was fully developed by both sides; and that they should consider it most regrettable if the entire case should be sent back for another trial. They wanted the State eliminated for jurisdictional reasons. Having determined that this is a suit of an equitable nature to quiet title and that the defendants were not entitled to a trial by jury as a matter of right, we think that the trial court did not abuse its discretion in discharging the jury and making its own findings of fact. We cannot improve upon the court's statement in justification of its ruling, pages 1885 and 1886 of the record:

"As to the charge that I have deprived Defendants of the right to a jury trial: The record shows that no jury was demanded until after November 29th; the jury was impanelled on January 10th. Testimony was concluded and both sides rested on Friday, January 27th, at about 10:00 A. M. The Court then requested

counsel for the parties to be back Monday morning (January 30th) to work out any jury issues (p. 1719), stating that the Court was going to need a lot of help in submitting the case; that while there might be some Judges who would know how to submit it that quick, the Court didn't know (p. 1720). Counsel for the Plaintiffs stated that he would request no jury issue (p. 1721). Counsel for the State stated there were no issues of fact (p. 1726). The court then requested counsel on both sides 'to get up any requested issues of fact you may want to present Monday morning' (p. 1726).

"On Monday morning, January 30th,. the Court stated that the first thing he wanted to determine was, whether there were any material or controlling issues of fact to go to the jury; that the Court didn't see a single fact issue, but that if counsel could show him where there were, the Court wanted to submit them to the jury (p. 1725). Leading counsel for Defendants then stated (p. 1736) that the defendants had attempted to go back over the record to see if there were any issues of fact; that if counsel's interpretation of the case was correct, then they felt that 'there really isn't any issue of fact; we say that frankly.' Counsel had not prepared, or requested, a single issue of fact.

"Arguments were continued the remainder of Monday. During the argument of Defendants' counsel, the Court again inquired as to whether there was an issue of fact, so he could get letters out to the jury (with reference to whether they should return) (p. 1850). Again, on the same day, the Court said (p. 1863), 'I am going to give you till tomorrow (Tuesday, January 31st) at 9:30 to get up your requests for jury issues, and either give you a jury trial on it or give you an exception * * *. I was in hopes you would have those ready this morning * * *.'

"By Tuesday morning, counsel for Defendants came up with three issues, out of nearly three weeks of testimony (about 1600 pages and 1200 Exhibits). These were eliminated by an agreement, as to two of them, that the Court might assume, without deciding, that the Little Barreta is located on the ground by the J. J. Cocke field notes

(p. 1911); and, as the other requested issue, the Court would hold the facts undisputed, calling therefore, only for a proper determination of the law (pp. 1912, 1913). Whereupon Defendants' counsel stated: 'Frankly, Your Honor, I am inclined to agree with that' (p. 1914).

"I think the record shows that I tried to be considerate and afforded counsel every opportunity to get up requested issues, even though this was an equity case; and that I would have accorded Defendants a jury trial upon ultimate or controlling issue if it had been requested."

 Assuming, arguendo, that the burden of proving the land in suit accreted to defendants, the appellants say that the plaintiff must recover upon the strength of its own title, not upon the weakness of the defendants'. This is true, but, we think, the appellee met this burden by showing indisputably that it had a valid leasehold interest, which it acquired from the state or sovereign that had a good title to the submerged land in controversy. The original possession of Humble's lessors at the time of their grants was not extended to the submerged land. The appellants' claim is that it was added thereto by accretion or reliction. That this did not happen was not required to be alleged or proven by the plaintiff. The defendants affirmatively alleged that the controverted area was formerly covered by the waters of Laguna Madre; and that, at the time of suit, it had accreted to their grants. The burden of proof, therefore, upon the issue of accretion was upon the defendants, the plaintiff having shown that, at the time of said grants, the controverted area was submerged land lying beneath the inland waters of the state. A fact, once shown to exist, is presumed to continue until the contrary is proven.

The original grants to the tracts in controversy, on which appellants rely, were issued by the sovereignties of Spain and Mexico during the period that the civil law of Spain, derived from the Roman civil law, was in force in both sovereignties. The trial court so found. The location on the ground of the grants of Big Barreta, Little Barreta, and Mirasoles, is fixed by the findings of the trial court so that their

east lines at no place conflict with the west lines of the state sections in Laguna Madre, as located by the State and delineated on a map in the General Land Office, which shows Laguna Madre to be a body of water, containing numerous islands, bounded on the east by Padre Island and on the west by the grants above mentioned. Official maps, issued by the state and federal governments from the earliest date, show Laguna Madre to be an arm of the sea, situated between Padre Island and the mainland. The federal government deemed it such, and dredged an intracoastal canal that traverses it from Corpus Christi to Brownsville. This canal is now being used for intracoastal transportation, and passes directly through the area that the trial court found was submerged land and a part of Laguna Madre. The Congress of the Republic of Texas and the Legislature of the State of Texas, from 1836 to the present time, have defined the boundaries of the State so as to include Laguna Madre; and the same legislature has transferred the lands in Laguna Madre to its Public Free School Fund, as permitted by the Texas Constitution of 1876.

After an extended hearing of much oral and documentary evidence, the trial court found that the sea has not abandoned these lands; that whatever building up has taken place has been by depositions to the bed of the sea, by accretions to the islands (mainly if not entirely to Toro) by relictions from Padre Island, and not by accretions to the shore of the mainland, which is still plainly discernible. The lower court specifically found that: "The line of demarcation between the Laguna and the Mainland is still patent for all to see. The area in controversy * * * is not fast land." It also found that there has not been any substantial change or building up of the area since the original surveys, particularly since the survey by Lieutenant Meade in 1846. In the last analysis, our decision must rest upon these findings, as in our judgment they are not clearly erroneous. We realize that the rules for apportionment of accreted land between different owners are fairly well settled; but these rules are dependent upon proof that the alluvion was by accretion which commenced by additions to the shores of separate proprietors. The lower court's finding that the appellants failed to meet the burden of this proof is fairly inferable from the record; and, therefore, not clearly erroneous.

Under the Spanish law, the seashore extends to the line of the highest tide in winter. Mayor, etc., of City of Galveston v. Menard, 23 Tex. 349, 399. In inland seas, at some places, the tides are nearly insensible. Precisely speaking, where there is no tide there is no shore; but, because a portion of the sea has no shore, it does not follow that it has no bed. The area in controversy was formerly the bed of the sea. The burden on the appellants was twofold: first, to prove that the sea had abandoned this area; second, to prove that appellants had acquired it by accretion or reliction. According to the findings below, the appellants did not meet either burden.

In our former opinion we stated that no claim by reliction from Padre Island was made by appellants. It is also true, and we now state for the sake of clarity, that Sun Oil Company claims none of the lands in controversy by accretion to or reliction from Padre Island. It is, therefore, apparent that there is no issue in this case as to any land created by accretion to or reliction from Padre Island. Sun judicially admitted that none of the lands described in Paragraph III of plaintiff's first amended complaint was claimed by it as accretion to Padre Island. R. 161. We agree with appellants that this admission covered land created by reliction, and was so understood by all the parties. We also recognize that the rule requiring a plaintiff to recover upon the strength of his own title applies to a suit to quiet title or remove a cloud therefrom. Guarantee Trust & Safe Deposit Co. v. Delta & Pine-Land Co., 5 Cir., 104 F. 5, 8.

In our former opinion, we stated that most of the land in controversy was on the Padre Island side of the old channel. We have found that statement to be incorrect, and now withdraw the entire sentence containing it, which is as follows: "Most of the land in controversy is on the Padre

Island side of the old channel; as to this land, which prior to the construction of said canal was built up by sedimentation across the channel from the mainland, appellants claim that it should be considered alluvion added to the shore of the mainland by accretion, but we cannot adopt this view."

■ In support of the principles announced in our former opinion, with reference to the doctrine that accretions belong to the land from which they begin, and that, where ownership is only to the shore, the accretion must begin at such point, see Fulton v. Frandolig, 63 Tex. 330, wherein the Supreme Court of Texas said: "It is also true that the right to alluvion depends upon contiguity; the accretions belong to the land immediately adjoining the water, however narrow it may be, and without regard to the size of the parcel behind it. Bates v. Illinois Central Railroad Co., 1 Black 204, 17 L.Ed. 158; Saulet v. Shepherd, 4 Wall. 502, 18 L.Ed. 442; Posey v. James, 7 Lea, Tenn., 98; Bristol v. Carroll County, 95 Ill. 84; Commissioner of Beaufort v. Duncan, 1 Jones, N.C., 234." In Hammond v. Shepard, 186 Ill. 235, 57 N.E. 867, 868, the Supreme Court of Illinois said: "All the authorities agree that, in order that a shore owner take land by way of accretion or reliction, it must appear that the addition was to his shore either by the deposit of earth or by the receding of the water from his land, and that such addition must be by slow and imperceptible processes." See also 56 Am.Jur., pp. 897, 898, 899, Sections 483, 485; 1 Kinney, Irrigation & Water Rights (2d Ed. 1912) 928; 1 Farham, Waters & Water Rights (1904) 320; 65 C.J.S., Navigable Waters, § 82, page 179; 1949 pocket supplement to 5 Thompson, Real Property (Perm. ed. 1940) 57, Sec. 2552.

For the purpose of comparison only (as we are bound by the Texas Court's interpretation of the Spanish law), we cite Ker & Co. v. Couden, 223 U.S. 268, 32 S.Ct. 284, 285, 56 L.Ed. 432, which holds that accessions to the shore of the sea by accretion belong to the public domain and not to the adjacent owners, according to the rule adopted by the leading civil-law countries, including France, Italy, and Spain. Justice McKenna dissented. Justice Holmes, in writing the majority opinion, stated that the question was a vexed one, as shown not only by "the different views of Spanish commentators, but by the contrary provisions of modern codes and by the occasional imitations of the doctors of the Roman law." Citing this case, and annotations in 35 Am.St.Rep. 309, Am.Jur., Vol. 56, Sec. 491, p. 902, says: "In some jurisdictions where the civil law prevails, however, it appears that the doctrine of the acquisition of title by accretion or reliction is limed to streams and does not apply to the shore of the sea."

After careful consideration, we are of the opinion that the petition for rehearing should be, and the same hereby is,

Denied.

## Appendix.

■ Jurisdiction to grant relief in a suit to quiet title or remove a cloud therefrom is inherent in a court that exercises equity powers. Sharon v. Tucker, 144 U.S. 533, 12 S.Ct. 720, 36 L.Ed. 532; Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 12 S.Ct. 239, 35 L.Ed. 1063; Garden Cemetery Corp. v. Baker, 218 Mass. 339, 105 N.E. 1070, Ann.Cas.1916B, 75; Gardner v. Buckeye Sav. & Loan Co., 108 W.Va. 673, 152 S.E. 530, 78 A.L.R. 1.

■ In jurisdictions in which distinctions between courts of law and chancery have been preserved, the suit to quiet title is not maintainable except in the court of chancery. Ruckman v. Cory, 129 U.S. 387, 9 S.Ct. 316, 32 L.Ed. 728; Surgett v. Lapice, 8 How. 48, 12 L.Ed. 982. The suits to quiet title or remove clouds are a development from what were anciently termed bills *quia timet* or bills of peace, which were remedies that originated in and appertained to the court of chancery. McConihay v. Wright, 121 U.S. 201, 7 S.Ct. 940, 30 L.Ed. 932. Suits to quiet title have been distinguished from those to remove clouds, on the ground that the purpose of the former is to put an end to vexatious litigation, while the purpose of the latter is to remove an asserted foundation for a future adverse claim. Holland v. Challen, 110 U.S. 15, 3

S.Ct. 495, 28 L.Ed. 52; Whitehouse v. Jones, 60 W.Va. 680, 55 S.E. 730, 12 L.R.A., N.S., 49.

The equity jurisdiction of the federal courts extends to suits to quiet title and to remove clouds therefrom. Reynolds v. First Nat. Bank, 112 U.S. 405, 5 S.Ct. 213, 28 L.Ed. 733; Grand Rapids and I. R. Co. v. Sparrow, C.C., 36 F. 210, 1 L.R.A. 480. Annotation: 12 L.R.A.,N.S., 76. Such jurisdiction is not ousted by state legislation providing a remedy by an action at law. Conversely, state statutes extending equity jurisdiction to cases where the plaintiff has an adequate remedy at law, or in which the defendant is entitled to a jury trial, cannot confer such jurisdiction on the federal courts in such cases. The general rule is that, where the defendant is in possession and the title or right in controversy is legal, a suit to quiet title, remove clouds, or determine adverse claims, in the absence of special grounds of equity jurisdiction, cannot be maintained, whatever the provisions of the state statute may be, since the defendant has a constitutional right to a trial by jury. Surgett v. Lapice, 8 How. 48, 12 L.Ed. 982.; Lewis v. Cocks, 23 Wall. 466, 23 L.Ed. 70; Holland v. Challen, 110 U.S. 15, 3 S.Ct. 495, 28 L.Ed. 52.; Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873; Wehrman v. Conklin, 155 U.S. 314, 15 S.Ct. 129, 39 L.Ed. 167; Black v. Jackson, 177 U.S. 349, 20 S. Ct. 648, 44 L.Ed. 801; Twist v. Prairie Oil & Gas Co., 274 U.S. 684, 47 S.Ct. 755, 71 L.Ed. 1297.

A suit to quiet title is a purely equitable proceeding, and a federal court is not required to resort to a jury, nor could it do so except for advice, although the cause was carried to the federal court from a state court in a state granting the right to jury trials in such cases. Surgett v. Lapice, 8 How. 48, 12 L.Ed. 982. In some jurisdictions, state statutory remedies for the removal of clouds on title are merely cumulative and do not preclude a resort to equity for relief. Gilbert v. McCreary, 87 W. Va. 56, 104 S.E. 273, 12 A.L.R. 1172. While the legislature may not extend the power of a court of equity so as to deprive a litigant of the constitutional right of trial by jury,

this right is not infringed by a statute regulating suits to quiet title which extends the remedy in equity to cases in which, before the Constitution and the enactment of the statute, no right of action would have existed. Grand Rapids & I. R. Co. v. Sparrow, C.C., 36 F. 210, 1 L.R.A. 480. See note: 3 Ann.Cas. 248–250. An enlargement of equitable rights by state statutes in actions to quiet title to realty may be administered by the courts of the United States as well as by the courts of the state. Bardon v. Land & River Improvement Co., 157 U.S. 327, 15 S.Ct. 650, 39 L.Ed. 719; Roberts v. Northern P. R. Co., 158 U.S. 1, 15 S.Ct. 756, 39 L.Ed. 873; Devine v. Los Angeles, 202 U.S. 313, 26 S.Ct. 652, 50 L.Ed. 1046; Lawson v. United States Min. Co., 207 U.S. 1, 28 S.Ct. 15, 52 L.Ed. 65; Annotations: 36 A.L.R. 714; Greeley v. Lowe, 155 U.S. 58, 15 S.Ct. 24, 39 L.Ed. 69; Clark v. Smith, 13 Pet. 195, 10 L.Ed. 123.

Suits to quiet title are not technically suits in rem, nor are they, strictly speaking, in personam; but, being against the person in respect of the res, wherein the decree does not extend beyond the property in controversy, these proceedings acquire a status that may be characterized as quasi in rem. McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 51 A.L.R. 731. It was because the instant case was not technically an in rem proceeding that we held the State of Texas to be not an indispensable party and one whose presence would defeat federal jurisdiction.

The title to minerals in place may be freed from adverse claims by a suit to quiet title thereto or remove clouds therefrom. Whitehouse v. Jones, 60 W.Va. 680, 55 S.E. 730, 12 L.R.A.,N.S., 49. See Annotations: 15 A.L.R. 110, 31 A.L.R. 952, 71 A. L.R. 160. Also, an easement is a proper subject of a suit to quiet title, since an easement is classifiable as real property. Blake v. Boye, 38 Colo. 55, 88 P. 470, 8 L.R.A., N.S., 418; Indiana, B. & W. R. Co. v. Allen, 113 Ind. 308, 15 N.E. 451, 3 Am.St. Rep. 650; Mannix v. Powell County, 60 Mont. 510, 199 P. 914; Lechman v. Mills, 46 Wash. 624, 91 P. 11, 13 L.R.A.,N.S., 990, 13 Ann.Cas. 923. Annotation: 57 A.L.R. 1426.

It has been stated that an action to quiet title may be maintained by the owner of land to determine any adverse claim of the defendant. Thompson v. Moore, 8 Cal.2d 367, 65 P.2d 800, 109 A. L.R. 1027. A state has power, within the usual constitutional limitations, to declare what shall be considered a cloud on the title to property; and, where it has done so, a federal court will give effect to the enactment. Clark v. Smith, 13 Pet. 195, 10 L.Ed. 123. A federal court may look to the legislation of the state in which the court sits to ascertain what constitutes a cloud upon the title; and what the state laws declare to be such, the courts of the United States, sitting in equity, have jurisdiction to remove. Reynolds v. First Nat. Bank, 112 U.S. 405, 5 S.Ct. 213, 28 L.Ed. 733. A cloud is cast on title if the claim is such that it would embarrass alienation of the property. Hudson v. Smith, 171 Okl. 79, 41 P.2d 861. Annotations: 8 L.R.A. 727; 28 Am.St.Rep. 33; 45 Am.St.Rep. 373.

[38–41] An unfounded claim of an easement has been held to constitute a cloud. Homeward Realty Corp. v. Safe Deposit & T. Co., 160 Md. 457, 154 A. 58, 78 A.L.R. 8. Also, acts done in the exercise of an asserted right of use or ownership. 44 Am.Jur., Sections 13 and 14, pp. 13, 14, 15. A court of equity has jurisdiction to prevent the casting of a cloud on the title to property, as well as to remove an existing cloud. Tyler v. Stanolind Oil & Gas Co., 5 Cir., 77 F.2d 802, certiorari denied, Allred v. Stanolind Oil & Gas Co., 296 U.S. 627, 663, 56 S.Ct. 149, 80 L.Ed. 445; Eppenauer v. Ohio Oil Co., 5 Cir., 98 F.2d 524, certiorari denied 306 U.S. 632, 668, 59 S.Ct. 461, 83 L.Ed. 1034; 44 Am. Jur., p. 17, Sec. 17. A lease may be a cloud, which equity has jurisdiction to remove. Robinson v. Marino, 145 Md. 301, 125 A. 701, 36 A.L.R. 692; Roxana Petroleum Corporation v. Colquitt; D.C., 34 F.2d 470, 475; Colquitt v. Roxana Petroleum Corp., 5 Cir., 49 F.2d 1025, certiorari denied 284 U.S. 669, 52 S.Ct. 43, 76 L.Ed. 566.

The State's attitude as to Admissions.

"Mr. Rice: Your Honor, answering your last inquiry first, we did not intend to make a fact issue on the fact that the condition was the same as Mr. de la Fuente found it. The State does have some evidence on that point which we had intended to come in with on rebuttal, and make just such an issue, but in view of the way that the Plaintiffs put on their accretion, the fact that they—all of their accretion either comes from the bed of the sea, or over from Padre Island, and not from the mainland out, we didn't see any use in taking the Court's time in going into the identity of conditions.

"Now, the burden of my argument was intended to be that the lines and objects and the acclivities on the ground are still there, not that the bed—

"The Court: That it is the same?

"Mr. Rice: It is the same, that is right. That the lines, whatever lines Mr. de la Fuente ran, can be located; the line that Mr. Field ran can be located with a great deal of clarity, because we think that the fact that the boundaries can be identified, and have been identified, is of some bearing on the legal issue.

"One of the statements of the rule of accretion is that [it] be identified, and the land did not have distinguishable features; that the boundary of the riparian [owner] moves with that moving line. That is one feature.

"Another feature is on this phase of the matter that in Texas the mineral estate and the surface estate have always been severed, and if we can locate the boundaries of those tracts as they had existed at the time when they were severed, before any relinquishment had been granted, etc., etc." PP. 1387, 1388, Vol. 5, of Record.

As to what constitutes the seashore under the controlling civil law, the State's reply brief contains the following, beginning at page 11:

"Appellants say that 'all parties concede that the controlling question in this case is whether the land in suit is "seashore." ' This is incorrect. While it is true that a decision that the land in question is 'seashore' would require that the judgment of the trial court for appellees be affirmed, a decision that the land is not 'seashore' does not require that judgment be rendered for appel-

lants. The latter decision merely makes it necessary to determine the further question of whether this land, admittedly a part of the original bed of Laguna Madre and outside of appellants' original mainland grants, has become a part of appellants' mainland grants under the doctrine of accretion or reliction. Even if the land be found to be 'dry land,' it still belongs to the State of Texas, since appellants have not discharged their burden of proving that their boundary line has changed as a result of accretion or reliction.

"In their reply brief (pp. 2–6), appellants list as 'not controverted' their point that under Spanish law the 'seashore' was limited to land covered daily by the ebb and flow of the tide. This point was clearly controverted in appellees' briefs, where it was shown that the 'seashore' under Spanish law was all that land covered by the 'highest swells' of the sea 'during the winter as well as during the strong but customary summer storms.'

"Scott's translation of the Partidas is the only one cited by appellants in support of their argument that the seashore is only that land covered by the daily ebb and flow of the tide. None of the other English translations of Law IV, Title 28, Third Partidas, makes any mention of the word 'tide.' All of the others are in accord with the official Gregorio Lopez edition (1555) which, when translated into English, defines the seashore as follows: ' * * * and all that land is designated as the shore of the sea which is covered by the water of the latter at its *highest swells* during the whole year, whether in winter or summer.'

"The Lislet and Carleton translation (1820) defines the seashore as ' * * * all that space of ground covered by the waters of the sea in their *highest annual swells,* whether in winter or summer.' The same translation is found in Hall, Laws of Mexico (1885) 448. 1 White's New Recopilacion of the Laws of Spain and the Indies (1839) 70 contains the following translation: ' * * * By shore of the sea we understand *whatever part of it is covered with water,* whether in winter or summer.'

"There is no basis for appellants' statement that the Scott translation of this portion of the Partidas was approved in State v. Balli, 1944, 144 Tex. 195, 190 S.W.2d 71. After setting out the Scott and White translations, the court said that under the law effective in Tamaulipas when the grant there involved was made, ' * * * The seashore was defined to be *"all that ground is designated the shore of the sea which is covered with water of the latter during the whole year, whether in winter or in summer."'* (190 S.W.2d at page 100.)

"The Supreme Court thus adopted White's translation, which is in accord with the official Lopez edition and with all of the English translations except Scott's.

"Appellants' contention that the words 'during the whole year' mean that the land must be covered by water every day of the year likewise is incorrect, as it fails to give any meaning to the qualifying clause 'whether in winter or in summer.' All of the words are given meaning in the Lopez gloss on this point when he says that the seashore is 'not all the land inundated by the extraordinary flows, * * * but only that part of the land *covered by the highest swells in perennial agitation, during the winter as well as during the strong but customary summer storms.'* 'Perennial' is defined by Webster's New International Dictionary as meaning 'Lasting or recurring from year to year or through a series of years; * * * also, lasting from year to year and appearing, or likely to appear, afresh from time to time * * *.'

"In Heard v. Town of Refugio, 1937, 129 Tex. 349, 103 S.W.2d 728, a river was held to be a 'perennial river' even though for periods of from six to nine weeks the water ceased to flow and stood in holes."

On pages 2 and 3 of the same brief, the Attorney General said:

"Appellants do not assert a grant from any sovereign to this immense area. Their whole claim is based on the fact that this area is above the reach of the daily ebb and flow of the tide.

"It is undisputed that all of the area lies in the bed of Lagua Madre. It is undis-

puted also that water from the mainland drains down into Laguna Madre and that at various times during the whole of each year sea water from the upper and lower reaches of Laguna Madre covers every one of the tracts in controversy.

"Appellants' claim clearly would be without substance if their grants were bordered by a stream or fresh-water lake exhibiting similar characteristics. An upland owner does not 'accede' to the bed of a stream or fresh-water lake even though it is dry much of the time. Appellants are in the difficult position of claiming that the rule as to them should be different because most of the water which perennially occupies this portion of Laguna Madre is salt water and comes from the sea. They advance no reason for the claimed difference.

"The gulfward boundary of the State of Texas is no even, unbroken line of ocean surf. There are many salt water bays, lagoons, lakes, and marshes which lie between the mainland proper and the islands which stretch along the coast from Brownsville to High Island. These areas up to the line of the mainland have always been considered as public domain and not appropriate to private ownership.

"Appellants would have this court hold that these areas have passed into private ownership wherever there does not exist a daily ebb and flow of the tide. They have cited no Texas case which so holds, and there is no basis in reason or authority for their argument.

"Appellants' whole argument is based upon an abstract rule of law which has no application to the facts of this case. The mainland grants which are their only title from the sovereign are bounded on the east by the Laguna Madre. The area in controversy herein lies wholly within the bed of Laguna Madre and outside the line of the mainland, which is a definite natural line on the ground. There is no evidence of any change in this line since appellants' mainland grants were first surveyed. Appellants therefore have no claim or title to any of the bed of Laguna Madre."